UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOHN HEILMAN, | No. 2:11-cv-1907-MCE-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| G.A. THUMSER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He claims that defendants Cate, Coyle, Dickinson, Duncan, Tapiz, Thumser, and Van Heerde violated his Eighth Amendment rights by implementing a policy that reduced his access to outdoor exercise to three hours per week. Plaintiff also claims that defendants Coyle and Tapiz retaliated against him for exercising his First Amendment rights. The matter is before the court on cross-motions for summary judgment. For the reasons that follow, it is recommended that plaintiff's motion be denied, defendants' motion be denied as to the Eighth Amendment claim but granted as to the First Amendment claim, and that defendant Cate be dismissed from the case.[1]

---

[1] Defendants submitted objections to plaintiff's summary judgment evidence, specifically Exhibits F and Q. *See* ECF No. 102-2. However, neither exhibit is material to the resolution of either plaintiff's or defendants' motion for summary judgment. Accordingly, the objections are moot.

1

## I.     BACKGROUND

This action proceeds on plaintiff's verified first amended complaint, filed December 28, 2011. ECF No. 19 ("FAC"). According to the complaint, plaintiff was housed with other mentally ill inmates in the Enhanced Outpatient Program ("EOP") wing at California Medical Facility ("CMF") from March 29, 2010 through March 8, 2011. FAC at 9-10.[2] During that time, defendants Cate, Coyle, Dickinson, Duncan, Tapiz, Thumser, and Van Heerde were allegedly responsible for the implementation of the "3 and/or 5 percent redirection plan" ("the Plan"). *Id.* at 11. The Plan was allegedly one of "various CDCR official policies which targeted the elimination or reduction of plaintiff's constitutionally adequate and/or minimum access to" the outdoor exercise yard. *Id.* at 15.

Plaintiff contends that the EOP wing was scheduled for a total of ten hours per week in the outdoor exercise yard, consisting of five hours of "open recreational yard" and five hours of "rehabilitation therapy" per week. *Id.* at 22. However, plaintiff's access to the yard frequently started fifteen to thirty minutes later than scheduled and ended ten to fifteen minutes earlier than scheduled. *Id.* Moreover, plaintiff contends that prison officials completely closed the exercise yard on Tuesdays under the Plan. Pl.'s Mot. for Summ. J., ECF No. 98-1 at 14. Additionally, "open recreational yard" was available only to inmates that were not required to participate in other treatment programs scheduled at the same time. *Id.* Plaintiff claims that for the period identified in his complaint, he had access to the exercise yard for just three hours per week. *See* ECF No. 96, Notice of Lodging Document in Paper (Pl.'s Dep. 25:11-25). The loss of time on the exercise yard allegedly "caused plaintiff to suffer injuries" and exacerbated his mental health illness. FAC at 13. Plaintiff alleges that the Plan was "not mere negligence but targeted [] plaintiff and the mentally ill inmates" housed in EOP. *Id.* at 20.

/////
/////
/////

---

[2] For ease of reference, all page number citations to court documents are to the pagination assigned via the court's electronic filing system.

Additionally, plaintiff contends that Tapiz and Coyle, both correctional officers at CMF, "conspired together . . . by filing false charges against [] plaintiff as retaliation for plaintiff seeking to reform" CMF's outdoor exercise yard policies through an administrative appeal. *Id.* at 17-18.

## II.  STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking

summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1  claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
2  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit
3  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
4  for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to
5  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
6  that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,
7  477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

   The court does not determine witness credibility. It believes the opposing party's
9  evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;
10 *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the
11 proponent must adduce evidence of a factual predicate from which to draw inferences. *American*
12 *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,
13 dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at
14 issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th
15 Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is
16 some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could
17 not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
18 trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant
19 summary judgment.

20  Concurrent with their motion for summary judgment, defendants advised plaintiff of the
21 requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.
22 ECF No. 95-7; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d
23 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*,
24 849 F.2d 409 (9th Cir. 1988).

25 **III.   ANALYSIS**
26    **A. Plaintiff's Motion for Summary Judgment**
27  Plaintiff's motion seeks summary judgment on both his Eighth Amendment claim and his
28 First Amendment retaliation claim. ECF No. 98. As a threshold matter, plaintiff appears to have

drafted his motion with a misunderstanding of the summary judgment standard.  Despite quoting the correct standard, plaintiff argues in conclusory fashion that he is entitled to summary judgment because he "has stated constitutional violations" and because his claims "have merit." *See* ECF No. 98 at 1-2, 12.  As explained above and in the notice that defendants provided plaintiff, summary judgment requires more than a statement of a claim and an assertion of merit.

The court also notes that plaintiff's complaint includes what are styled as a "cruel and unusual punishment" claim and a "deliberate indifference" claim, both of which are grounded in the Eighth Amendment and based on plaintiff's alleged deprivation of outdoor exercise.  *See* ECF No. 19 at 10, 18-19.  However, "deliberate indifference" is simply an element of an Eighth Amendment claim based on the deprivation of outdoor exercise, as opposed to a freestanding cause of action.  *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  The court therefore address plaintiff's Eighth Amendment claims as a single cause of action.

### 1. Eighth Amendment Claim

> Under *Foster v. Runnels*, 554 F.3d 807 (9th Cir. 2009), an inmate seeking to prove an Eighth Amendment violation must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Id.* at 812 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).  The second step, showing "deliberate indifference," involves a two part inquiry.  First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970.  This part of our inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious.  *See id.* at 842, 114 S. Ct. 1970 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious.").  Second, the inmate must show that the prison officials had no "reasonable" justification for the deprivation, in spite of that risk. *See id.* at 844, 114 S. Ct. 1970 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.").

*Thomas*, 611 F.3d at 1150-51 (footnotes omitted) (bracketing in original).  The Ninth Circuit has "held consistently that 'ordinarily the lack of outside exercise for extended periods is a

1  sufficiently serious deprivation' for Eighth Amendment purposes." *Id.* at 1151 (quoting *LeMaire*
2  *v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)). Whether a prisoner's access to outdoor exercise is
3  constitutionally adequate is a "context-sensitive" inquiry. *Richardson v. Runnels*, 594 F.3d 666,
4  673 (9th Cir. 2010).

5  As the moving party, plaintiff bears the initial responsibility of presenting the basis for his
6  motion and identifying those portions of the record, together with affidavits, if any, that he
7  believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.
8  Plaintiff has not satisfied that burden. As noted above, his motion is based on his belief that his
9  claims have merit and that he has stated a cause of action. His restatement of his factual
10 allegations does not demonstrate an absence of a genuine issue of material fact. Furthermore,
11 even if plaintiff had filed a properly supported motion, defendants have presented specific facts
12 that show there is a genuine issue for trial.

13 Defendants do not dispute that, as a direct result of the implementation of the Plan, they
14 reduced plaintiff's access to the outdoor exercise yard during the time period specified in
15 plaintiff's complaint. ECF No. 95-1 at 2.[3] Additionally, defendants attached evidence to their
16 motion indicating that plaintiff's access to the yard was occasionally reduced for a variety of
17 other reasons (e.g., prison staff meetings and inclement weather). ECF No. 95-6. Defendants do,
18 however, dispute the average number of hours per week that plaintiff had access to the yard.
19 They claim that plaintiff had more than five hours per week in the yard in all but one month of the
20 year-long period identified in plaintiff's complaint. ECF No. 95-1 at 2.[4] Plaintiff counters that he
21 had access for just three hours per week. Pl.'s Dep. 25:11-25.

22 Under substantive governing case law for the elements of this claim, this factual dispute is
23 material and therefore precludes summary judgment in plaintiff's favor. As noted above, outdoor
24 exercise is within the aegis of the Eighth Amendment, and whether a prisoner receives a

---

[3] Specifically, defendants submitted evidence indicating that the exercise yard was closed to plaintiff all day on Tuesdays pursuant to the Plan. ECF No. 95-6.

[4] According to defendants, plaintiff received less than five hours per week in January 2011 because of closures due to fog. They contend that in that month, plaintiff received an average of four hours and fifty-three minutes. ECF No. 95-1 at 2.

1  constitutionally adequate amount of outdoor exercise is a context-sensitive inquiry.  *Richardson*,

2  594 F.3d at 673.  Despite grappling with the issue for decades, "the Ninth Circuit has not

3  identified 'a specific minimum amount of weekly exercise that must be afforded'" under the

4  Eighth Amendment.  *Jayne v. Bosenko*, No. 2:08-cv-02767-MSB, 2009 WL 4281995, at *8 (E.D.

5  Cal. Nov. 23, 2009) (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1212 (9th Cir. 2008)).

6  *But see Thomas*, 611 F.3d at 1152 ("California strictly regulates this 'regular outdoor exercise,'

7  ordinarily requiring prisons to provide inmates held in the general population with at least three

8  hours of exercise per week and inmates held in segregation with at least one hour of exercise per

9  day.")  However, the Ninth Circuit has explicitly stated that "[a]lthough the length and severity of

10 the alleged illegal conduct may be critical questions at trial, they are not dispositive at the

11 summary judgment stage."  *Allen v. Sakai*, 48 F.3d 1082, 1088 n.5 (9th Cir. 1994).  Because the

12 parties dispute the average number of hours that plaintiff had access to the outdoor exercise

13 yard—a dispute that is material under Ninth Circuit precedent—plaintiff's motion for summary

14 judgment with respect to the Eighth Amendment claim must be denied.

### 2. **First Amendment Claim**

16       To state a viable First Amendment retaliation claim, a prisoner must allege five elements:

17 "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3)

18 that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

19 Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

20 *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  To raise a genuine issue of material

21 fact as to whether a defendant took adverse action because of a plaintiff's protected conduct, a

22 plaintiff must produce evidence that the defendant knew of the plaintiff's protected conduct and

23 either (1) the protected conduct and adverse action were close in time, (2) the defendant

24 expressed opposition to the protected conduct, or (3) the defendant's proffered reason for the

25 adverse act was false or pretextual.  *See Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).

26       Plaintiff has not produced evidence that Coyle and Tapiz knew of plaintiff's protected

27 conduct.  In his motion, plaintiff claims that Coyle and Tapiz had knowledge of plaintiff's

28 protected conduct "through the CMF administrative appeals process."  ECF No. 98 at 16-17.

More specifically, plaintiff alleges that Coyle and Tapiz "fil[ed] false charges" against plaintiff in a disciplinary citation after—and in retaliation of—plaintiff's filing of a group administrative appeal that sought to reform the prison's outdoor exercise yard policies. ECF No. 19 at 17. The evidence that plaintiff submitted with his motion for summary judgment indicates that plaintiff signed and dated his group administrative appeal on February 16, 2011, and that prison officials received that appeal the following day. ECF No. 98 at 75-79 (Exhibit B to Pl.'s Mot. Summ. J.). However, "Exhibit A" to plaintiff's amended complaint indicates that Tapiz issued the disciplinary citation on January 12, 2011. See ECF No. 19 at 26 (Exhibit A to Pl.'s FAC). Thus, plaintiff's own submissions indicate that Coyle and Tapiz's allegedly retaliatory conduct predated plaintiff's protected conduct by more than a month. Because Coyle and Tapiz could not have issued the disciplinary citation in retaliation of plaintiff's *subsequent* protected conduct, plaintiff's motion for summary judgment with respect to the First Amendment retaliation claim must be denied.

Thus, it is recommended that plaintiff's motion for summary judgment on both of plaintiff's claims be denied.

**B.    Defendants' Motion for Summary Judgment**

Defendants' motion seeks summary judgment in their favor on both of plaintiff's claims on the grounds that there are no genuine issues of material fact and that they are entitled to qualified immunity, in addition to requesting that the court dismiss defendant Cate. ECF No. 95-1 at 5-10.

**1.    Plaintiff's Eighth Amendment Claim**

Defendants argue that the court should grant summary judgment in their favor on the Eighth Amendment claim because (1) plaintiff cannot show any adverse medical effects from the reduction in his outdoor exercise time, (2) the "one hour per day, five days per week" requirement that the Ninth Circuit identified in *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979), does not apply to plaintiff, (3) plaintiff received "the constitutional minimum" amount of outdoor exercise, (4) even if plaintiff did not receive the constitutional minimum amount of outdoor exercise, the evidence nonetheless shows he "received substantial amounts of out-of-cell time," and (5)

1  plaintiff "will not be able to prove" deliberate indifference. ECF No. 95-1 at 5-8. None of these
2  contentions warrants summary judgment in defendants' favor.

### a. Adverse Medical Effects

"[T]emporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects." *Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000). Thus, whether the court should grant defendants' motion for summary judgment on the grounds that plaintiff has not established adverse medical effects first depends on whether defendants subjected plaintiff to a "temporary denial" or a "long-term deprivation" of outdoor exercise. In *Allen*, the Ninth Circuit found that limiting plaintiff to forty-five minutes of outdoor exercise per week over the course of six-weeks was a long-term deprivation. 48 F.3d at 1088; *see also Lopez*, 203 F.3d at 1133 n.15 (concluding that a six and a half week deprivation is long term). Here, plaintiff claims he received three hours of outdoor exercise per week over the course of forty-nine weeks. Because plaintiff's forty-nine week deprivation is significantly longer than the six-week period the Ninth Circuit found to be a long-term deprivation in *Allen*, plaintiff's allegations amount to a long-term deprivation. *See also Allen*, 48 F.3d at 1088 n.5 (rejecting defendants' argument that Eighth Amendment violations arise only from complete denials of outdoor exercise). Because plaintiff's alleged deprivation of outdoor exercise was long-term, plaintiff is not required to establish adverse medical effects. The presence or absence of any such effects may bear on the question of damages, but defendants' argument does not warrant summary judgment.

### b. Applicability of *Spain*

In *Spain*, the Ninth Circuit affirmed an order that the defendants provide "the right of outdoor exercise one hour per day, five days per week unless inclement weather, unusual circumstances, or disciplinary needs made that impossible." 600 F.2d at 199. Defendants argue that the "one hour per day, five days per week" requirement does not apply to plaintiff because the Ninth Circuit limited its holding in *Spain* to the plaintiffs in that case and plaintiff's deprivation of outdoor exercise is factually distinguishable. ECF No. 95-1 at 5. While *Spain* was limited to the plaintiffs in that case, who for a period of years "were in continuous segregation,

spending virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise," 600 F.2d at 199, that distinction does not warrant summary judgment in favor of defendants. The court explained that "[W]e do not consider it necessary to decide whether deprivation of outdoor exercise is a per se violation of the [E]ighth [A]mendment. Our ruling, and that of the district court, applies to these plaintiffs who were assigned to [continuous segregation] for a period of years." But not establishing a per se violation rule hardly establishes a per se rule under which the deprivation alleged here is not sufficient as a matter of law to constitute an Eight Amend violation. As explained with regard to plaintiff's motion, the length and severity of the alleged illegal conduct "may be critical questions at trial, they are not dispositive at the summary judgment stage." *Allen v. Sakai*, 48 F.3d at 1088 n.5.

### c. The "Constitutional Minimum"

Defendants argue that the court should grant summary judgment in their favor because plaintiff received "the constitutional minimum" amount of outdoor exercise. Again, defendants fail to recognize that "the Ninth Circuit has 'not identified a specific minimum amount of exercise that must be afforded'" under the Eighth Amendment, and that summary judgment is reserved for cases in which there is no genuine issue of material fact. *See Jayne*, 2009 WL 4281995, at *8 (quoting *Pierce*, 526 F.3d at 1212). Here, there is a genuine dispute as to the average number of hours per week that plaintiff had access to the outdoor exercise yard; defendants claim that plaintiff had access for five hours per week while plaintiff claims he had access just three hours per week. This dispute is material because plaintiff's Eighth Amendment claim is dependent on the "length and severity of the alleged illegal conduct" (which, as twice noted above, are critical questions at trial and not dispositive at the summary judgment stage). *Allen*, 48 F.3d 1082 n.5; *see also Richardson*, 594 F.3d at 672 (reversing a grant of summary judgment in favor of the defendant prison officials because "claims involving a prisoner's right to exercise require a full consideration of context, and thus a fully developed record").

/////

/////

/////

11

For these reasons defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim must be denied.[5]

### d. Plaintiff's Out-of-Cell Time

Defendants further suggest that even if plaintiff had less access to the outdoor exercise yard than that required by the Eighth Amendment, the court should grant their motion for summary judgment because the evidence shows plaintiff "received substantial amounts of out-of-cell time." ECF No. 95-1 at 6. Defendants, however, cite to no precedent establishing that out-of-cell therapeutic activities are a constitutionally adequate substitute for an unconstitutional deprivation of outdoor exercise. While the five-hour-per-week requirement the Ninth Circuit identified in *Spain* might not be applicable to the present case, that opinion quite clearly notes "[t]here is substantial agreement . . . that some form of regular *outdoor* exercise is extremely important to the psychological and physical well being of the inmates." 600 F.2d at 199 (emphasis added) (collecting cases); *see also LeMaire*, 12 F.3d at 1458 (citing *Spain*) ("[T]his circuit has determined the long-term denial of *outside* exercise is unconstitutional."). Defendants' argument does not warrant summary judgment.

### e. Deliberate Indifference

Defendants contend that plaintiff has failed to show that he was deprived of a serious medical need and "will not be able to prove" that defendants knew of and disregarded a risk to his safety. ECF No. 95-1 at 8. In support of these contentions, defendants emphasize that plaintiff had the opportunity to leave his cell each day for breakfast, dinner, and various therapeutic activities, and that he was "offered more than five hours per week of outdoor exercise." *Id.* at 7-8.

Again, defendants fail to recognize that plaintiff disputes their claim that he was "offered more than five hours per week of outdoor exercise," as plaintiff maintains he had access to the

---

[5] The court acknowledges that *Jayne* and *Pierce* addressed the amount of weekly exercise that must be afforded to detainees. Nevertheless, aside from the limited holding in *Spain*, the Ninth Circuit has not identified a "specific minimum" that must be afforded to prisoners. *See also Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment . . . we apply the same standards.").

outdoor exercise yard just three hours per week. Further, while the fact that plaintiff had the opportunity to leave his cell for breakfast, dinner, and various therapeutic activities is relevant to the context-sensitive constitutional inquiry, s*ee Richardson*, 594 F.3d at 673, it does not warrant summary judgment in defendants' favor. And contrary to defendants' argument that plaintiff has failed to show a sufficient deprivation, the Ninth Circuit has "held consistently that 'ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation' for Eighth Amendment purposes." *Thomas*, 611 F.3d at 1151 (quoting *LeMaire*, 12 F.3d at 1457). As explained above, the duration of plaintiff's purported deprivation is a "long-term deprivation" under the case law.

Defendants' argument that plaintiff will not be able to prove that they knew of and disregarded a risk to plaintiff's safety also does not warrant summary judgment in defendants' favor. As the Supreme Court noted in *Farmer*, "a factfinder may conclude that prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious." 511 U.S. at 837. The Ninth Circuit elaborated in *Thomas*:

> *Farmer*'s obviousness requirement does not necessitate a showing that an individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome. Rather, we measure what is "obvious" in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved.

611 F.3d at 1151. Here, plaintiff alleges not only that the prison officials knew of an obvious health risk, he alleges that the deprivations of exercise time were targeted at plaintiff and other mentally ill inmates.

After noting that the "case law uniformly stresses the vital importance of exercise for prisoners" and that the defendants did not dispute the length and scope of plaintiff's deprivation of outdoor exercise, the panel in *Thomas* concluded that defendants were "aware as a matter of law" of the risk such a deprivation posed to plaintiff. *Id.* at 1152. Of course, in the present case defendants dispute the scope of plaintiff's deprivation, which is distinguishable from the thirteen

months and twenty-five days the defendants denied outdoor exercise to the plaintiff in *Thomas*. Nevertheless, as discussed above, the claimed deprivation is still "long-term" under the case law, which uniformly stresses the vital importance of exercise for prisoners. Defendants apparently challenge the veracity of plaintiff's claims, but this factual dispute is not amenable to resolution on summary judgment. Contrary to defendants' argument, if a jury were to credit plaintiff's factual assertions it could reasonably conclude that the denial of adequate exercise yard time was the result of deliberate indifference.

### f. Conclusion

Because there are genuine issues of material fact, defendants' motion for summary judgment must be denied with respect to plaintiff's Eighth Amendment claim.

### 2. Plaintiff's First Amendment Claim

As explained above, plaintiff's own submissions indicate that Coyle and Tapiz's allegedly retaliatory conduct predated plaintiff's protected conduct by more than a month. Thus, Coyle and Tapiz could not have issued the disciplinary citation in retaliation of plaintiff's subsequent protected conduct—an element essential to the claim that plaintiff would bear the burden of proving at trial. Therefore, summary judgment is appropriate on this claim. *See Celotex*, 477 U.S. at 322; *Rhodes v. Robinson*, 408 F.3d 567-68.

### 3. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known that their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, ___ U.S. ___, ___, 134 S. Ct. 1861, 1865 (2014) (per curiam). "The first asks whether the facts, 'taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right.'" *Id.* (internal bracketing omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). A plaintiff invokes a "clearly established" right when

"the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640. "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 134 S. Ct. at 1866 (internal bracketing and quotation marks omitted).

Defendants' qualified immunity argument rests on their dispute of plaintiff's factual claims, not the status of the law as to the conduct alleged. They insist that there was no Eighth Amendment violation because plaintiff received the "constitutional minimum" of five hours of outdoor exercise per week.[6] As discussed above, the amount of time plaintiff was provided for outdoor exercise is disputed and plaintiff contends that he had access to the outdoor exercise yard just three hours per week. The factual dispute is both genuine and under Ninth Circuit case law material to whether there was an Eighth Amendment violation. If there was not, then of course there was no violation of a clearly established constitutional right. But the material factual dispute that precludes summary judgment on that question also precludes summary judgment on defendants' assertion of qualified immunity. *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed.").

### 4.   Dismissal of Cate

Defendant Cate argues that he should be dismissed from the case because he had no personal involvement in the implementation of the Plan at CMF. ECF No. 95-1 at 9. As discussed below, plaintiff does not contend that Cate personally participated in the alleged deprivation but instead asserts as the head of the Department, Cate was responsible for the claimed violations.

/////

---

[6] Because the court finds defendants Coyle and Tapiz are entitled to summary judgment on the merits of plaintiff's First Amendment claim, the court need not address the issue of qualified immunity as to that claim.

15

Under § 1983, plaintiff must demonstrate that the defendants holding supervisory positions personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, liability under § 1983 may be imposed on supervisors if: (1) the supervisor personally participated in the deprivation of constitutional rights, (2) the supervisor knew of the violations and failed to act to prevent them, or (3) the supervisor "implement[ed] a policy so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer*, 511 U.S. at 825.

Plaintiff does not contend that Cate personally participated in the deprivation of plaintiff's constitutional rights or that Cate knew of the violations and failed to act to prevent them. Rather, plaintiff contends that (1) under California law, Cate is responsible for approving the operational polices "implemented in each and every one of California's penal institutions pursuant to the CDCR chain-of-command structure," and (2) the Plan is so deficient that the policy is a repudiation of constitutional rights and is the moving force of the constitutional violation. ECF No. 108 at 21-23 (citing Cal. Penal Code § 5054 and Cal. Code Regs. tit. 15, § 3380(c)-(d)). Neither of these arguments establishes Cate's personal participation in the alleged deprivation of plaintiff's constitutional rights.

The statutory and regulatory authority that plaintiff cites does not establish Cate's personal participation. California Penal Code section 5054 simply provides that "the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the Secretary of the Department of Corrections and Rehabilitation." While Cate concedes that he held that position during plaintiff's alleged deprivation of outdoor exercise, the statute does not impose § 1983 liability on Cate without personal participation. Moreover, the regulations that plaintiff cites simply state that prison administrators operational plans and procedures are subject

/////

16

1  to the approval of the Secretary of Corrections and Rehabilitation.  Cal. Code Regs. tit. 15,
2  § 3380(c).[7]

3  Plaintiff's second argument fails for two reasons.  First, he fails to establish that Cate
4  implemented the policy.  *See Hansen v. Black*, 885 F.2d 642 (imposing supervisory liability
5  where "supervisory officials implement a policy so deficient . . . .") (emphasis added) (quoting
6  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).  Plaintiff does not contest defendant's
7  assertions that the Plan was initiated by the Director of the Division of Adult Institutions and that
8  "[t]he warden of CMF had responsibility for establishing the [Plan] at the institution and Cate did
9  not have any contact with her regarding the [Plan]."  ECF No. 95-1 at 9.  Moreover, contrary to
10 plaintiff's conclusory statement, the Plan itself is not a repudiation of constitutional rights.
11 Because plaintiff has failed to establish Cate's personal participation in plaintiff's alleged
12 deprivation, the undersigned recommends that the court dismiss Cate from the action.

13 **IV.    RECOMMENDATION**

14 Accordingly, it is hereby recommended that (1) plaintiff's motion for summary judgment
15 (ECF No. 98) be denied, and (2) defendants' motion for summary judgment (ECF No. 95) be
16 denied as to the Eighth Amendment claim but granted as to the First Amendment retaliation claim
17 against defendants Coyle and Tapiz, and (3) defendant Cate be dismissed from this action.[8]

18 These findings and recommendations are submitted to the United States District Judge
19 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
20 after being served with these findings and recommendations, any party may file written

---

[7] Subdivision (d) is of even less relevance to Cate's alleged personal participation in implementation of the Plan.  *See* Cal. Code Regs. tit. 15, § 3380(d):

> Copies of institution and parole region operational plans and procedures requiring the Secretary's review and approval will be submitted to central office on a scheduled basis. A copy of each currently approved plan will be maintained in the department's policy documentation files. Operational procedures which do not require the Secretary's review and approval do not need to be submitted to central office unless requested.

[8] If the court adopts this recommendation, the action will proceed solely as to plaintiff's Eighth Amendment claim against Coyle, Dickinson, Duncan, Tapiz, Thumser, and Van Heerde.

17

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 3, 2014.

                                                                    /s/ Edmund F. Brennan
                                                                    EDMUND F. BRENNAN
                                                                    UNITED STATES MAGISTRATE JUDGE